UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

UNITED STATES OF AMERICA,

            Plaintiff,

v.                                                             Case No. 22-CR-57

DARWIN J. PAMANET,

            Defendant.

---

## SENTENCING MEMORANDUM

---

Darwin J. Pamanet, by counsel, hereby submits this sentencing memorandum. Pamanet requests that the Court impose a 20-year term of imprisonment followed by supervised release.

**I.**     **Background**

Pamanet was originally charged in a criminal complaint. Docket No. 1. The indictment that followed charged Pamanet with a total of five counts: three counts of aggravated sexual abuse (30 years to life); one count of production of child pornography (15 years to life); and one count of possession of child pornography (0 – 20 years). Docket No. 9.

On April 27, 2022, Pamanet entered a guilty plea to Count Four (sexual exploitation of a child, i.e., production of child pornography) contrary to 18 U.S.C. § 2251(a) and (e). Docket No. 13. The plea agreement is pursuant to Rule 11(c)(1)(C), under which the parties agreed that the appropriate sentence is a term of imprisonment between 20 and 30 years. *Id*. at ¶24. The Court accepted the plea and adjudged Pamanet guilty. Docket No. 14. Sentencing is scheduled for July 27, 2022, via Zoom videoconference. Counsel for Pamanet will make a record of the defendant's consent to sentencing by videoconference at the hearing.

Pamanet faces a statutory sentencing range of 15 to 30 years imprisonment pursuant to 18 U.S.C. § 2251(a) and (e). As noted above, the plea agreement binds the parties to recommend a sentence within the range of 20 – 30 years. The available term of supervised release is from five years to life. PSR ¶119; 18 U.S.C. § 3583(k). Pamanet is indigent, so only the $100 special assessment applies. PSR ¶125.

II.  **Guideline Objections**

Counsel for Pamanet objected to the PSR's guideline calculations. That objection is attached to the PSR as an addendum; counsel incorporates it here and relies upon the legal analysis therein. But given that the PSR did not change

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

2

Case 1:22-cr-00057-WCG   Filed 07/24/22   Page 2 of 11   Document 17

from the first draft to the final version despite the legal untenability of its analysis, counsel for Pamanet writes further to enter a wholesale objection to the PSR's use of the guidelines.

Rather than argue how many guideline increases can dance on the head of a defendant, counsel here will no longer tinker with the machinery of the guidelines. Rather than be carefully circumspect, counsel for Pamanet will simply come right out and say it: this is dumb. The facts of the case are bad enough without having to search for and contest with "ghost counts" or "pseudo counts." The names alone (given by Courts of Appeal, not counsel) are enough to indicate that this analysis is divorced from reality. Pamanet objects to the entire exercise.

To be specific for the record, Pamanet objects to the PSR at Paragraph 29 and Paragraphs 39 – 56, the resulting range at Paragraph 116, and the entirety of the Probation Officer's Response found in the addendum to the PSR. The PSR's guideline analysis is acceptable from Paragraphs 30 – 38, and would result in a guideline range of 324 – 360 months (27 to 30 years) after acceptance of responsibility, based on an offense level of 41 and criminal history category I.

Post-*Booker*, the guidelines are advisory only, so the argument above is more than just sound and fury. The Court should put no weight upon the PSR's

guideline analysis, first because of the legal analysis in Pamanet's objection, and second, because the Court is free to disagree with any guideline on policy grounds. *Kimbrough v. United States*, 522 U.S. 75 (2007). The Court must make an individualized assessment based on the facts of the case to arrive at a sentence that is sufficient but not greater than necessary. *Gall v. United States*, 522 U.S. 38 (2007). After calculating the range, the Court then steps back and uses independent judgment under 18 U.S.C. § 3553(a) to impose a sentence tailored to the offender and his crimes. *United States v. King*, 861 F.3d 692 (7th Cir. 2017).

### III. Facts

Pamanet lived on the Menominee Reservation in a house with his mother. Also residing there were four girls (ages 13, 12, 8, and 2) who were nieces of Pamanet's mother. In December of 2021, the 12-year old girl borrowed Pamanet's cell phone to play games. She looked through the phone and found pictures of the 8-year old's private parts. She told an adult (likely Pamanet's mother) but nothing came of the report. She then later (in January of 2022) told her father, who called the police. Tribal Police responded and interviewed the girls. They also took Pamanet into custody on a Tribal warrant and seized his phone.

The FBI conducted a forensic examination of Pamanet's phone and located 18 images of child pornography taken between October and December of 2021. These images depicted the 8-year old and 2-year old children who were living with Pamanet. Apparently unbeknownst to Pamanet, his phone was also making backups to a cloud-based service. A search warrant to Google revealed additional short videos of the same children, including the video taken in July of 2021 as charged in Count Four, to which Pamanet entered a guilty plea. Pamanet gave a statement in February of 2022 in which he admitted having digital sexual contact with the 8-year old and taking photos/videos of the contact.

## IV. History and Characteristics

Pamanet is 46 years old. Aside from short times elsewhere, he has lived his entire life on the Menominee Reservation. His life was one of poverty growing up, with as many as 14 people living in the same house. His family had no money, he had no toys, and Pamanet seldom even had clean clothing. PSR ¶¶84, 85. Both of his parents were alcoholics, as were much of his extended family. PSR ¶¶86, 87. Pamanet was afraid of his mother, so he stayed away from her. His father wasn't around (PSR ¶88), so Pamanet was often left to his own devices as a child.

Pamanet has never been married. He has two adult children, ages 24 and 26. PSR ¶91. Paragraphs 107 – 111 of the PSR detail a work history at a variety of jobs, most recently the last three years as a cook at the Menominee Casino. Pamanet's current health is substandard, with several long term but untreated health concerns. PSR ¶94. Pamanet has not had any prior mental health treatment, and relates both past and present thoughts of suicide. PSR ¶96.

Pamanet is a long-term alcoholic. *See generally* PSR ¶¶99 – 104. He describes drinking at least 8 – 12 beers daily for the past 20 years. Pamanet's history of OWI convictions also provide objective proof of his alcohol problems. He has at least seven prior OWI's (1995, 1996, 2000, 2000, 2003, 2006, 2014). PSR ¶¶59 – 72. His other criminal record entries also result from intoxication, with alcohol-based obstructing charges in 1997, 2000, and 2008. Independently, both counsel and Pamanet note that he's "never been arrested while sober." PSR ¶99. It is likely that Pamanet's current stay in jail is his longest period of sobriety in years. That sobriety has brought some clarity (and shame) to Pamanet, and he stated that "addiction has ruined his life" and that he's now going to have to pay for his behavior. The offenses in this case took place while he was drunk, and Pamanet is obviously correct when he says he doesn't think when he drinks. PSR ¶104.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

## V. Argument

The parties' proposed resolution for this case is a plea agreement under Rule 11(c)(1)(C) with a sentencing range of 20 to 30 years. Pamanet argues that a 20-year term would be sufficient but not greater than necessary to accomplish the purposes of sentencing.

The first policy in § 3553(a) is that the sentence should take into account the seriousness of the offense. Pamanet was charged with three contact offenses, a production offense, and a possession offense. The contact offenses carried 30-year mandatory minimum sentences, making a plea to those counts unlikely. Pamanet, however, did not want to go to trial. He confessed and agreed he was guilty, and did not want any of the juvenile victims to have to testify. The government, for its part, likely did not want the victims to have to testify either, if it could be avoided. Knowing, however, that requiring a plea to a 30-year mandatory count would result in a trial that nobody wanted, the parties came to an agreement to resolve the case with a plea to Count Four, which is production of child pornography based on Pamanet making a video of his actions in that count. This charge carries a mandatory sentence of 15 years, and given the seriousness of all of the offenses, the parties agreed on a sentencing range of 20 to

30 years. Given Pamanet's age (46) and health, a sentence at the higher end of that range could be a *de facto* life sentence. A sentence at the lower end – 20 years – punishes Pamanet severely, but gives him the chance to be released back to the community.

Any sentence within the range suggested by the parties would provide respect for the law. Any sentence between 20 and 30 years is a very, very long time. The world will change in that amount of time, and anybody associated with this case (victims, family, lawyers) will have moved on to different stages of their lives. A sentence measured in decades (two or three of them) shows how serious Pamanet's crimes were. No sentence within the 20 – 30 year range would fail to provide respect for the law. Though respect flows from more than just high numbers, a sentence of 20 years corresponds to the seriousness of the offense.

Pamanet is already adequately deterred. He was arrested on January 22, 2022, and has remained in custody since that date. The first lesson of deterrence came from his speedy arrest and immediate prosecution. The second lesson, and perhaps the harder one, has come from his forced sobriety. Pamanet is sober now, probably for the first extended period in years. With sobriety comes clarity and time to think. Those things put together means Pamanet is now deeply ashamed

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

8

Case 1:22-cr-00057-WCG   Filed 07/24/22   Page 8 of 11   Document 17

of himself. Were he sober, Pamanet would not likely have committed these crimes. But he wasn't sober, and he did commit the crimes, and now he has come to the terrible realization of what he's done. That realization and sobriety will deter Pamanet as much or more than the term of years he will serve. The sentence also tells the community of how these actions are punished, and may provide some level of general deterrence.

The public is protected from Pamanet no matter what sentence is imposed. He's already in jail and won't get out for at least a 20-year term. Upon release, he will likely be on supervision for the rest of his life, so Pamanet will always be under some measure of correctional control. Alcohol treatment will begin in custody and will continue on release, further protecting the public.

All of Pamanet's criminal history, this case included, took place when he was drunk. Pamanet's level of alcohol abuse wore out his body and dulled his mind. He did things drunk that he likely would not have done sober. But now that he is sober, he has to confront the monstrous things he's done. Time will help, as will mental health treatment. Probably the greatest way to protect the public from future crimes by Pamanet is to mandate treatment and testing. His long and

significant alcohol abuse will qualify him for the BOP's Residential Drug Abuse Program (RDAP),[1] which has both custodial and post-release portions.

The Seventh Circuit has noted that the factors listed in § 3553 are vague and not subject to easy definition. *See, e.g., United States v. Beier*, 490 F.3d 572, 574 (7th Cir. 2007)(a sentencing judge has enormous latitude, reinforced by the vagueness of some of the § 3553 factors such as what is "just punishment."). Twenty years is a significant punishment for any defendant, and particularly for Pamanet who has not served any prior prison sentences. Twenty years addresses the nature and gravity of his offenses while giving him a chance to be released back to the community. Pamanet is already deterred, will be further deterred by a sentence of any length, and will finally be deterred by supervision following his sentence. A sentence of 20 years is certainly long enough to provide treatment. With Pamanet's remorse, treatment in the BOP and while on supervision has a good chance of success.

## VI. Conclusion

Based on the grounds listed above and upon those to be argued orally at the sentencing hearing, counsel for Pamanet respectfully requests that the Court

---

[1] Though he can still participate in RDAP, Pamanet would not qualify for any sentence reduction due to his offense of conviction. He also would be ineligible to earn any extra good time credits.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

impose a term of imprisonment of 20 years (240 months) followed by eight years of supervised release. Counsel requests that the Court decline to impose a fine as Pamanet does not have the financial ability to pay. No restitution requests have been submitted. PSR ¶128. Counsel asks that the judgment include recommendations for BOP placement at FCI Sandstone and for the Residential Drug Abuse Program.

Dated at Green Bay, Wisconsin, July 24, 2022.

Respectfully submitted,

s/ Tom Phillip
Tom Phillip, Bar #1023113
Attorney for Darwin J. Pamanet
Federal Defender Services of Wisconsin, Inc.
801 E. Walnut Street, Second Floor
Green Bay, Wisconsin 54301
Tel:   920-430-9900
Fax:   920-430-9901
tom_phillip@fd.org

N:\Cases-Open\O-P\Pamanet, Darwin J. - 22-040\Sentencing\Sent Memo FINAL.docx